# United States Court of Appeals
## For the First Circuit

No. 12-1729

CRYSTAL MOSES,

Plaintiff, Appellant,

v.

MARK MELE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter,[*] Associate Justice,
and Selya, Circuit Judge.

Brian R. Marsicovetere, with whom Griffin, Marsicovetere & Wilkes, P.C. was on brief, for appellant.
Daniel J. Mullen, with whom Ransmeier & Spellman Professional Corporation was on brief, for appellee.

March 27, 2013

---

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SELYA, Circuit Judge.** Plaintiff-appellant Crystal Moses seeks damages for what she alleges was false arrest and malicious prosecution attributable to defendant-appellee Mark Mele. In a thoughtful opinion, the court below concluded that the defendant was protected by qualified immunity under federal law and official immunity under New Hampshire law. Moses v. Mele, No. 10-CV-253, 2012 WL 1416002, at *4 (D.N.H. Apr. 24, 2012). Consequently, it granted the defendant's motion for summary judgment. Id. at *8. After careful consideration, we affirm.

The anatomy of the case is easily delineated. At the times material hereto, the plaintiff, her son Kyle, and Kyle's twenty-one year-old girlfriend, Catherine Sims, lived together. On July 12, 2008, Kyle was the operator of a motor vehicle that was involved in an accident in Lebanon, New Hampshire. The defendant was among the Lebanon police officers who responded to the scene. After investigating the matter, the police placed Kyle under arrest for reckless conduct, simple assault, and criminal threatening. Sims, a passenger in Kyle's car, witnessed the accident and gave a written statement.

Three days later, the defendant contacted Sims, expressed doubts about the accuracy of her written statement, and requested that she meet with him at police headquarters. Sims agreed, on the condition that the plaintiff accompany her.

The plaintiff drove Sims to the police station in her Jeep. Upon their arrival, the two women sat together in the lobby. When the defendant appeared and asked Sims to follow him to an interview room, the plaintiff attempted to accompany her. The defendant demurred, stating that he wanted to interview Sims alone.

With Sims in tow, the defendant stepped into a hallway. He told Sims that her statement about the accident contained inconsistencies and that he would not speak to her in the presence of the plaintiff (the driver's mother). He suggested that the plaintiff had come to the station not to protect Sims but, rather, to safeguard Kyle's interests. Sims replied that she would not speak to the officer alone and would have to call her mother. The defendant warned Sims against leaving the police department and threatened to obtain a warrant for her arrest if she left.

When Sims returned to the lobby, the plaintiff advised her that she did not have to speak with the defendant alone and that she should either call her mother or depart. According to the plaintiff, the defendant became strident and reiterated that he would arrest Sims if she tried to leave. Notwithstanding this admonition, the plaintiff put her arm around Sims and escorted her out of the police station. As the plaintiff ushered Sims toward her Jeep, the defendant repeatedly told Sims that she should not leave the premises. The plaintiff, however, continued to counsel

-3-

Sims to leave because the defendant "was being a threatening bully."

The defendant called for assistance and several officers responded. He then explained the situation to his supervisor, Corporal Gerald Brown, who instructed another officer to arrest the plaintiff.

On July 20, the defendant filed a criminal complaint charging the plaintiff with witness tampering. See N.H. Rev. Stat. Ann. § 641:5(I)(b). The Lebanon District Court held a hearing and found probable cause for the arrest. An indictment followed.

In due course, the plaintiff moved to dismiss the indictment, arguing that the witness tampering statute was unconstitutional. The motion was never heard because the prosecutor elected to dismiss the case. This action was never fully explained, but on the face of the indictment there is a notation dated June 15, 2009, stating "Nol prossed due to witness problems."

The dismissal of the criminal charge did not end the matter. In June of 2010, the plaintiff sued the defendant in the United States District Court for the District of New Hampshire. Invoking 42 U.S.C. § 1983 and the district court's supplemental jurisdiction, 28 U.S.C. § 1367, she asserted both constitutional claims and pendent state-law claims. After some preliminary

skirmishing not relevant here,[1] the plaintiff's suit narrowed to two causes of action: that the defendant was liable for (i) false arrest under the Fourth Amendment, see U.S. Const. amend. IV, and (ii) malicious prosecution under state law, see State v. Rollins, 533 A.2d 331, 332 (N.H. 1987). The defendant moved for summary judgment. See Fed. R. Civ. P. 56(a). The plaintiff opposed the motion, but the district court granted it. Moses, 2012 WL 1416002, at *8. The court did not reach the merits of the plaintiff's claims; instead it grounded its decision on a conclusion that, as a matter of law, the defendant was entitled to qualified immunity on the federal constitutional claim and official immunity on the state-law claim. Id. at *4. This timely appeal ensued.

In the adjudication of appeals, starting from scratch and building a rationale from the ground up is sometimes an extravagant waste of judicial resources. To minimize such idle exercises, we have noted that when a trial court accurately takes the measure of a case, persuasively explains its reasoning, and reaches a correct result, it serves no useful purpose for a reviewing court to write at length in placing its seal of approval on the decision below. See, e.g., Marek v. Rhode Island, 702 F.3d 650, 653 (1st Cir. 2012); Eaton v. Penn-Am. Ins. Co., 626 F.3d 113, 114 (1st Cir.

---

[1] Along the way, the plaintiff dropped a gallimaufry of other claims, including claims for unlawful seizure, interference with rights of speech and association, violation of her substantive due process rights, and common-law false arrest.

-5-

2010); Seaco Ins. Co. v. Davis-Irish, 300 F.3d 84, 86 (1st Cir. 2002); Ayala v. Union de Tronquistas de P.R., Local 901, 74 F.3d 344, 345 (1st Cir. 1996); In re San Juan Dupont Plaza Hotel Fire Litig., 989 F.2d 36, 38 (1st Cir. 1993). Because this is such an instance, we affirm the entry of summary judgment substantially on the basis of Judge Barbadoro's thoughtful opinion. We add only three comments.

**First.** As said, the district court terminated the plaintiff's section 1983 claim on the basis of qualified immunity. The doctrine of qualified immunity protects a state actor from liability for damages under section 1983 as long as his conduct did not violate clearly established constitutional or federal statutory rights. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Díaz v. Díaz Martínez, 112 F.3d 1, 3 (1st Cir. 1997). The official's actions are gauged by a standard of objective reasonableness. See Harlow, 457 U.S. at 818-19.

To obtain the benefit of qualified immunity, a police officer need not follow an unquestionably constitutional path. The case at hand exemplifies this point; where, as here, a section 1983 action rests on a claim of false arrest, the qualified immunity standard is satisfied "so long as the presence of probable cause is at least arguable." Ricci v. Urso, 974 F.2d 5, 6-7 (1st Cir. 1992) (internal quotation marks omitted).

The plaintiff argues that the district court erred in granting summary judgment because there are numerous disputed issues of material fact. She describes several instances in which her version of the facts paints the defendant's conduct in a less attractive light. But this argument misapprehends the nature of the qualified immunity inquiry. The mere fact that the parties espouse differing versions of the truth does not preclude summary judgment on the basis of qualified immunity. What counts is whether the undisputed facts, together with the nonmoving party's version of any disputed facts, suffices to remove the shield of qualified immunity.

Of course, if the success or failure of the qualified immunity defense turns on a question of fact that is unresolvable on the summary judgment record, summary judgment is improper. See, e.g., Morelli v. Webster, 552 F.3d 12, 19, 25 (1st Cir. 2009); Buenrostro v. Collazo, 973 F.2d 39, 43 (1st Cir. 1992). Here, however, the district court avoided this pitfall by accepting as true and in its entirety the plaintiff's account of the facts. See Moses, 2012 WL 1416002, at *4 (supportably finding, on the plaintiff's version of the facts, that probable cause for the arrest was at least arguable). In other words, the court assumed for argument's sake that all disputes about material facts should be resolved in the plaintiff's favor. When a court takes such a cautious approach and the record, so viewed, nevertheless supports

a grant of qualified immunity, summary judgment is appropriate. See Martinez v. Colon, 54 F.3d 980, 983-84 (1st Cir. 1995); Brennan v. Hendrigan, 888 F.2d 189, 194 (1st Cir. 1989); see also Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004) (explaining that "in the absence of a genuine issue of material fact, a defendant's right to qualified immunity presents a question of law").

**Second.** The plaintiff's suggestion that the district court erred in granting summary judgment on the malicious prosecution claim need not detain us. This suggestion is ephemeral: on appeal, the plaintiff casts aspersions in this direction but she does not offer any developed argumentation concerning the dispositive issue — the district court's application of the state-law doctrine of official immunity. It is a bedrock principle that appellate arguments must be presented face-up and squarely; and given the lack of development on this issue, we deem abandoned any challenge to the entry of judgment on the malicious prosecution claim. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

**Third.** The defendant argues that the prior state proceedings, including the probable cause determination and the return of the indictment, preclude the plaintiff from arguing that probable cause was lacking. The district court declined to reach this preclusion argument in light of its immunity determinations. See Moses, 2012 WL 1416002, at *4. Because we find these

-8-

determinations fully supportable, it would be gratuitous for us to venture into the complexities of the preclusion issue.  Courts should take pains not to decide issues when there is no real reason to do so.

We need go no further.


**<u>Affirmed</u>.**